# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RENE M.,

      *Plaintiff,*

vs.

Case No. 20-CV-1371-EFM

KILOLO KIJAKAZI,
Acting Commissioner of Social Security

      *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Rene M. seeks judicial review of a final decision by Defendant, the Acting Commissioner of the Social Security Administration, denying his application for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("the Act"). He contends that the administrative law judge ("ALJ") (1) failed to properly evaluate whether his impairments constituted the medical equivalent of a Listing, (2) formulated an RFC unsupported by substantial evidence and in conflict with the occupations identified by the Vocational Expert, (3) failed to order a consultative examination necessary to fully develop the record, and (4) improperly discounted various parts of the record in formulating the Plaintiff's RFC. As laid out more fully below, the Court does not find any of these arguments to be meritorious. Therefore, the decision of the Commissioner is affirmed.

## I. Factual and Procedural Background

Plaintiff filed his claim for disability insurance and supplemental security income in September 2018, alleging an onset date of January 1, 2013. He alleged disability due to a combination of psoriatic arthritis and pain from degeneration in his right foot, right shoulder, bilateral knees, right hip, thoracic and lumbar spine, ankle, as well as diabetes with neuropathy, chronic infections secondary to immunosuppressive medications, obesity, carpel tunnel syndrome and pseudogout.

Plaintiff's claims were denied initially in November 2018. He timely requested reconsideration, and on reconsideration his claims were again denied. Plaintiff then timely requested a hearing. Following a hearing on the record, the ALJ issued a written decision denying benefits in February 2020.

The ALJ, in her written decision, followed the five-step sequential evaluation process laid out by the applicable regulations. She found at Step 1 that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2013. At Step 2, the ALJ found that Plaintiff had the severe impairments of "plaque psoriasis, distal interphalangeal psoriatic arthropathy, bilateral carpal tunnel syndrome, lumbar spine and thoracic spine degenerative changes, fragmentation of the right knee cap, status post right quadriceps tendon rupture, left knee osteoarthritis and meniscal tear, and obesity." However, the ALJ found at Step 3 that none of these severe impairments met or medically equaled an impairment listed in the regulations.

The ALJ then considered the Plaintiff's residual functional capacity ("RFC"). The ALJ found that Plaintiff had the residual functional capacity to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. He can stand or walk in combination for 2 hours in an 8-hour workday with normal

-3-

> breaks and can sit for 6 hours in an 8-hour workday with normal breaks. The claimant can occasionally climb ramps and stairs, may not climb ladders, ropes and scaffolds, frequently balance, and occasionally stoop, kneel, crouch and crawl. The claimant can frequently handle and finger with the upper extremities. The claimant can have occasional exposure to extreme cold and heat, wetness, humidity, vibration, fumes, odors dusts gases and poor ventilation but may not be exposed to hazards such as unprotected heights and machinery with moving mechanical parts.[1]

In particular, the ALJ found that Plaintiff had good results with his medications for plaque psoriasis. While the ALJ noted that Plaintiff had at times had outbreaks while on medications, they did not appear to be functionally limiting as Plaintiff reported that he cared for his father for several months. In addition, the ALJ relied on a clinic visit in October 2019 during which Plaintiff was found with only some psoriatic patches on his arms, an improvement compared to a year earlier when Plaintiff presented with patches on his torso and arms, along with a rash on his lower legs.

The ALJ further found, as to Plaintiff's reported bilateral hand issues, that Plaintiff had some evidence of swollen joints of the hands but no gross neurological deficits. Plaintiff's symptoms were suggestive of bilateral carpel tunnel syndrome, but the ALJ noted there were no suggestions for surgical intervention and an x-ray of the Plaintiff's hands showed no evidence of erosive or destructive change. Plaintiff's own reports were that, while he suffered from morning stiffness in his hands, he did fine as long as he was busy. Plaintiff also reported a positive response to medications.

The ALJ also recognized that Plaintiff had a long-standing history of low back pain. His x-rays noted lumbar and thoracic spine multilevel degenerative changes. This evidence was offset, the ALJ noted, by Plaintiff's own reported activities such as working out six times per week and

---

[1] SSA R., Doc. 13, p. 16-17.

working in his yard. In a physical examination in November 2016, there were occasional lumbar muscle spasms and positive straight leg raising signs bilaterally, but inspection of the thoracic spine, gait and balance was normal. The ALJ noted that Plaintiff also reported a positive response to medications.

As to Plaintiff's reported knee problems, the ALJ found that the evidence did not support a conclusion that these problems were disabling. In so finding, the ALJ again relied on Plaintiff's own reports of his activity and his reports that his medications were helping. In addition, after problems with septic arthritis and pseudogout arose in his left knee, the ALJ noted evidence that Plaintiff's pain improved drastically after surgical intervention. Ongoing medical records showed those problems were resolved. In January 2019, the Plaintiff reported going to the gym every day, and in an October 2019 examination, the provider noted knee crepitus but no tenderness, swelling, effusion, or limitation of range of motion.

Finally, the ALJ noted that she had considered the Plaintiff's obesity in combination with his other impairments when formulating his RFC. The ALJ found the prior opinions of the state agency medical consultants to be persuasive, each of which found Plaintiff's exertional limitations to be that he could stand or walk for a total of 2 hours and could sit for about 6 hours out of an 8-hour workday.

At Step 4, the ALJ found that claimant was unable to perform any past relevant work. At Step 5, based on the testimony of a Vocational Expert and Plaintiff's age, education, work experience and RFC, the ALJ found that there were jobs that exist in significant numbers in that national economy that Plaintiff could perform. As a result, the ALJ concluded that Plaintiff was not disabled under the Act.

Plaintiff appealed this decision to the Appeals Council, which denied review in October 2020. The ALJ's written decision is therefore the final agency action for the purposes of judicial review. Plaintiff now appeals to this Court.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[2] The Court must therefore determine whether the Commissioner made factual findings that are supported by substantial evidence in the record and applied the correct legal standard to those factual findings.[3] "Substantial evidence . . . is 'more than a mere scintilla.' "[4] "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[5] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[6] However, courts "also do not accept 'the findings of the Commissioner' mechanically or affirm those findings 'by isolating facts and labeling them as substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.' "[7] "Evidence is not substantial

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).

[4] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[5] *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229).

[6] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[7] *K.I. v. Kijakazi*, 2021 WL 4149087, at *1 (D. Kan. 2021) (alteration in original) (quoting *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012)).

if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion."[8]

"An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[9] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[10]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[11] The steps are designed to be followed in order.[12] If it is determined, at any step of the process, that the claimant is or is not disabled, further evaluation is unnecessary.[13]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals one of a designated list of impairments.[14] If the impairment does not meet or equal one of these designated impairments, the

---

[8] *Id.* (quoting *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005)).

[9] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citations omitted).

[10] *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920).

[11] *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); see 20 C.F.R. § 404.1520(a)(4).

[12] *Barkley*, 2010 WL 3001753, at *2.

[13] *Id.*; *Lax*, 489 F.3d at 1084 (citing *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)).

[14] *Lax*, 489 F.3d at 1084 (citations omitted).

ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[15]

Upon determining the claimant's RFC, the Commissioner turns to steps four and five, which require the Commissioner to determine whether the claimant can either perform past relevant work or can generally perform other work that exists in the national economy, respectively.[16] The claimant bears the burden in steps one through four to prove an impairment or combination of impairments that prevents the performance of past relevant work.[17] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, based on the claimant's RFC and other factors, the claimant could perform other work in the national economy.[18]

### III.   Analysis

**A.   The ALJ properly considered whether Plaintiff's impairments equaled a listed impairment.**

Plaintiff first complains that the ALJ did not fully consider whether any of his impairments constituted the medical equivalent of an impairment listed in the regulations. An impairment is "medically equivalent to a listed impairment in appendix one if it is at least equal in severity and duration to the criteria of any listed impairment."[19] Medical equivalence can be found in any of three ways:

---

[15] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)).

[16] *Id.* (citing *Williams*, 844 F.2d at 751).

[17] *Lax*, 489 F.3d at 1084 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)).

[18] *Id.* (quoting *Hackett*, 395 F.3d at 1171).

[19] 20 C.F.R. § 404.1526(a).

> First, if the claimant has an impairment that is described in the Listings, but the claimant (1) does not exhibit one or more of the findings specified in that Listing, or (2) exhibits all of the findings, but one or more of the findings is not as severe as specified in the particular Listing, the Commissioner will find that the claimant's impairment is medically equivalent to that Listing if the claimant has other findings related to his or her impairment that are at least of equal medical significance to the required criteria.  Second, if the claimant has an impairment that is not described in the Listings, the Commissioner compares the claimant's findings with those for closely analogous listed impairment and, if the findings related to the claimant's impairment are at least of equal medical significance to those of a listed impairment, the Commissioner will find that medical equivalence.  Third, if the claimant has a combination of impairments, no one of which meets a Listing, the Commissioner compares the claimant's findings with those for closely analogous listed impairments and if the findings related to the claimant's impairments are at least of equal medical significance to those of a listed impairment, the Commissioner will find the combination of impairments medically equivalent to that Listing.

Social Security Ruling ("SSR") 17-2p provides that, if the ALJ believes the record evidence does not support a finding of medical equivalence, the ALJ "is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment."  "Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding."[20]

Plaintiff's concerns are directed primarily toward the perceived failure of the ALJ to consider whether his impairments were medically equivalent to Listing 14.09D for inflammatory arthritis.  The ALJ found "that the claimant's impairments do not meet or equal any of the criteria of the listed impairments as set forth in 20 C.F.R., Part 404, Appendix 1 to Subpart P (the Listing of Impairments)," but did not specifically consider whether medical equivalence to Listing 14.09D was established by the record.  Such a detailed review, however, was explicitly not required by SSR 17-2p.

---

[20] Social Security Ruling 17-2p, 2017 WL 3928306, at *4.

The ALJ did discuss Listing 14.09 when she considered whether or not the Plaintiff's impairments met that Listing, and further discussed Listing 1.04 in considering whether Plaintiff's spinal problems were sufficiently severe to meet that Listing.  Plaintiff complains that the ALJ's failure to discuss whether the combination of his impairments—specifically, inflammatory arthritis and spinal disorders—were medically equivalent to a listing, but the Court concludes that the ALJ's discussion of Listings 14.09D and 1.04 was sufficient to allow for review.[21]  The ALJ complied with her obligation at Step 3, and the Court finds no error requiring remand.

**B.    The RFC is supported by substantial evidence and does not conflict with the occupations identified by the Vocational Expert.**

Plaintiff next contends that the ALJ failed to follow the guidance of SSR 83-10 in formulating Plaintiff's RFC. "Social Security Rulings are binding on all components of the Social Security Administration."[22]  They "represent precedent final opinions and orders and statements of policy and interpretations that [the Social Security Administration] [has] adopted."[23]

After consideration of the entire record, the ALJ found that Plaintiff has the RFC to performing:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. He can stand or walk in combination for 2 hours in an 8-hour workday with normal breaks and can sit for 6 hours in an 8-hour workday with normal breaks. The claimant can occasionally climb ramps and stairs, may not climb ladders, ropes and scaffolds, frequently balance, and occasionally stoop, kneel, crouch and crawl. The claimant can frequently handle and finger with the upper extremities. The claimant can have occasional exposure to extreme cold and heat, wetness, humidity,

---

[21] *See Angelyn H. v. Kijakazi*, 2022 WL 1665014, at *2 (D. Utah 2022) (The ALJ's "discussion of the evidence at later steps in the sequential process was sufficient to allow for review.").

[22] 20 C.F.R. § 402.35(b)(1).

[23] *Id.*

>vibration, fumes, odors dusts gases and poor ventilation but may not be exposed to hazards such as unprotected heights and machinery with moving mechanical parts.

This RFC largely tracked the limitations set out by state agency medical consultant Dr. Hunter, upon reconsideration of Plaintiff's claim. Specifically, Dr. Hunter found that Plaintiff could stand or walk for a total of 2 hours per day and could sit for about 6 hours in an 8-hour workday, with normal breaks.

Because SSR 83-10 states that, for sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday,"[24] Plaintiff contends that Dr. Hunter's opinion should be read as stating that Plaintiff should be limited to sedentary work. This is significant, Plaintiff adds, because SSR 83-10 notes that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger action."[25] Plaintiff goes on to argue that although the ALJ included a limitation to frequent use of the bilateral hands in the RFC, the occupations identified by the Vocational Expert required good use of the hand and are not likely to be performed when seated. This, Plaintiff contends, was in error.

Plaintiff is incorrect. First, Dr. Hunter did not opine that Plaintiff should be limited to sedentary work. While Plaintiff's citation to SSR 83-10 is technically correct, it is incomplete. That ruling also states that that some light jobs "involve[] sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion that in

---

[24] 1983 WL 31251, at 5.

[25] *Id.*

-10-

sedentary work."[26]  The ALJ thus did not disregard the guidance of SSR 83-10 in formulating Plaintiff's RFC of light work.

Second, though "relatively few unskilled light jobs are performed in a seated position,"[27] the Vocational Expert identified two unskilled light jobs that aligned with Plaintiff's RFC—including the limitation to sitting for 6 hours in an 8-hour workday.  Notably, both of these jobs require only frequent reaching, handling, and fingering.[28]  Because the occupations identified by the Vocational Expert do not conflict with the RFC, and the RFC itself is supported by—and not contradicted by—the opinion of the state agency medical consultant, the Court concludes the ALJ's decision is supported by substantial evidence on these grounds.

**C.      No consultative examination was required.**

Plaintiff also challenges the ALJ's decision on the grounds that the ALJ should have ordered a consultative examination.  An ALJ may order a consultative examination if the ALJ cannot get necessary information from the claimant's medical sources, to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow the ALJ to make a determination.[29]  An ALJ has "broad latitude" in determining whether to order a consultative examination.[30]

Plaintiff claims that his care was provided through a low-cost clinic and a charity program for specialty care and that both failed to provide a full evaluation of his back and hand impairments.

---

[26] *Id.*

[27] *Id.*

[28] *See* DICOT § 526.687-010, Potato-chip Sorter, 1991 WL 674513; DICOT § 728.684-022, Wireworker, 1991 WL 679684.

[29] 20 C.F.R. § 404.1519a(a)-(b).

[30] *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir.1993) (stating ALJ has discretion to order consultative examination)

The resulting lack of evidence, he contends, required the ALJ to order a consultative examination to develop the record.

The ALJ was not required to order a consultative evaluation because there was adequate evidence in the record as to Plaintiff's impairments of the back and hand. As to his back limitations, the ALJ noted that "[t]he evidence of record shows the claimant has a long-standing history of low back pain with lumbar and thoracic spine multilevel degenerative changes noted on x-rays."[31] The ALJ relied on, among other things, the prior administrative findings of state agency medical professionals that found Plaintiff had severe "DDD," or disorders of back-discogenic and degenerative. The ALJ went on to say that while this would normally weigh in Plaintiff's favor, Plaintiff's own reported activities, such as working out six times per week and working in his yard, as well as several normal findings related to his back issues and his positive response to medication, weighed against him.

Plaintiff complains that his treatment through the low-cost and charitable clinics did not test whether he met the requirements of Listing 1.04. This may be true, but it does not mean that the record was insufficiently developed such that there was insufficient record evidence for the ALJ to make a determination of whether Plaintiff's impairments met or equaled that listing. The record here is comprised of extensive treatment records of Plaintiff's back problems, prior administrative findings, as well as Plaintiff's own hearing testimony. The Court concludes that there existed sufficient evidence in the record for the ALJ to make a disability determination.[32] A consultative examination was not required.

---

[31] SSA R., Doc. 13, p. 18.

[32] *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (noting the ALJ did not need to further develop the record where sufficient evidence existed to make a disability determination).

As to Plaintiff's hand limitations, the ALJ found that the record reflected a "history of distal interphalangeal psoriatic arthropathy," as well as swollen joints of the hands and evidence of bilateral carpel tunnel syndrome. The ALJ noted that there have been no suggestions for surgical intervention, and that an x-ray taken in October 2015 was negative bilaterally with no evidence of erosive or destructive change. The ALJ also relied on Plaintiff's own reports, from his treatment records, that "as long as he is busy he does ok" along with a positive response to medication.[33]

Plaintiff complains that the ALJ made these findings on an incomplete record because his grip strength was never tested by his providers. Even if this is the case, there was sufficient evidence in the record, such as that from Plaintiff's own reported activities of chores, cooking, and driving—all of which require gripping, fingering, and handling—for the ALJ to gauge Plaintiff's ability on each of these. Additionally, the ALJ relied on the opinions of state agency medical professionals, none of whom made findings as to Plaintiff's decreased grip. Accordingly, the record was sufficiently developed and the ALJ properly exercised her "broad latitude" in declining to order a consultative examination.

**D.    The ALJ's decision is supported by substantial evidence.**

Plaintiff raises a number of issues that he believes plague the ALJ's decision as to his RFC. The factual findings of the ALJ, to be upheld, must be supported by substantial evidence.[34] This is evidence that a reasonable mind would accept to support the conclusion.[35] It requires "more

---

[33] SSA R., Doc. 13, p. 18.

[34] *Id.*

[35] *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co.*, 305 U.S. at 229).

than a mere scintilla,"[36] a threshold that has been described as "not high."[37]  Still, "[e]vidence is not substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion."[38]

The ALJ's decision here is clearly supported by substantial evidence.  While Plaintiff accuses the ALJ of inaccurately summarizing or "cherry picking" the objective medical evidence, the Court does not view the ALJ's decision as doing so.  For example, Plaintiff disagrees with the ALJ's characterization that he has had good results with medications for his plaque psoriasis.  This, however, was supported by Plaintiff's treatment records which show improvement in his psoriatic patches in successive visits.  Plaintiff also faults the ALJ for concluding that his condition was not functionally limiting as he was able to care for his father, but the ALJ was entitled to consider Plaintiff's activities of daily living.  Further, even given Plaintiff's more detailed description of the care involved—driving, cooking, and taking care of the yard—the Court does not find that the ALJ's conclusion that the psoriasis was not functionally limiting was in error.

Plaintiff's challenges to the ALJ's decision regarding his back, knee, and hand problems are largely similar to those above in that he complains that the ALJ omitted some detail that makes the decision unsupported.  For instance, the ALJ found that Plaintiff's reported activities of working out six times per week and doing yard work contradicted the level of functional limitation Plaintiff claimed.  Plaintiff claims this description omits that he used only machines with back supports, or that he breaks up yard work into 30-minute intervals, but this is immaterial.  The ALJ properly considered Plaintiff's activities of daily living in discounting Plaintiff's subjective

---

[36] *Id.*

[37] *Id.* at 1157.

[38] *K.I. v. Kijakazi*, 2021 WL 4149087, at *1 (quoting *Lawton*, 121 F. App'x at 366).

allegations and in formulating Plaintiff's RFC.  In addition, Plaintiff notes that his medication only offered him partial relief, but this is consistent with the ALJ's statement that Plaintiff reported a *positive response* to certain medications, rather than complete relief.

In sum, Plaintiff complaints as to the ALJ's decision do not convince the Court that the decision was not supported by substantial evidence.  More than a mere scintilla of evidence supports the decision of the ALJ, and it is not the function of this Court to reweigh the evidence or substitute its judgment for that of the Commissioner.[39]

**IT IS THEREFORE ORDERED** that decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

This case is closed.

Dated this 10th day of January, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[39] *Bowman*, 511 F.3d at 1272 (quoting *Casias*, 933 F.2d at 800).